# CIRCUIT COURT OF THE CITY OF WAYNESBORO

Erie Insurance Exchange

    v.

Allstate Ins. Co.

May 10, 1999

BY JUDGE HUMES J. FRANKLIN, JR.

    In November of 1997, Erie Insurance Company filed its Motion for Judgment against Allstate alleging, among other things, that Allstate abrogated its duty to defend one Vera Gatewood in an accident involving Karen Anderson Nonnenmocher that arose out of a collision between two individuals operating motor vehicles in the City of Harrisonburg. Among other allegations, Erie alleges that it is entitled to receive from Allstate the sum of $54,723.35, which it paid to Nonnenmocher plus interest at the legal rate upon the principal amount of the judgment against Gatewood of $50,000.00 until paid by Allstate to Erie. Allstate, by counsel, filed its Grounds of Defense to the Erie Motion for Judgment. Subsequent thereto, Erie filed a Motion for Partial Summary Judgment, which is the issue currently before this Court.

    In December 1993, Karen Nonnenmocher was involved in an automobile accident with Barry Gatewood. At the time of the accident, Mr. Gatewood's automobile was insured by Allstate policy of automobile liability insurance No. 008178416 (the "Allstate policy"). Ms. Nonnenmocher, at the time of the accident, was insured by Erie under its Pioneer Family Auto Policy, No. Q071104210V (The "Erie policy"). Following the accident, Ms. Nonnenmacher filed suit against Mr. Gatewood in Rockingham County Circuit Court alleging both negligence and intentional tort (the

"Nonnenmocher suit"). Allstate was made aware of the filing of suit and denied responsibility under the Allstate policy. Allstate did not defend Mr. Gatewood or take any action on his behalf, nor did it enter into a nonwaiver agreement, issue a reservation of rights letter, or engage in a declaratory judgment action to determine its liability and duties under the Allstate policy. Allstate, effectively, wiped its "good hands" of the matter and left Mr. Gatewood to fend for himself.

The case went to trial, with Mr. Gatewood defending himself *pro se*, in Rockingham County Circuit Court. Before the case went to the jury, the intentional tort count and the request for punitive damages were stricken. It should be noted that Allstate does not allege this action was collusive or fraudulent or that the court acted improperly. Thus, the case was given to the jury solely on the issue of negligence. The jury found Mr. Gatewood negligent, awarded $50,000.00 in damages, and the court entered judgment pursuant to the jury verdict in the sum of $50,000.00 with interest at the legal rate from December 15, 1995, until paid plus costs in the sum of $191.00.

Erie paid the full amount of the judgment to Ms. Nonnenmacher, $54,723.35 (judgment amount, plus interest, plus costs), and Ms. Nonnenmocher assigned Erie all rights of recovery against the person or persons liable for the judgment. Thus, Erie is subrogated and entitled to seek recovery against Gatewood and Allstate.

The first issue is whether Allstate breached its duty to defend Mr. Gatewood. The second issue is, if the answer to the first is in the affirmative, whether the consequence of Allstate's breach is that it must satisfy the judgment and is barred from relitigating whether Mr. Gatewood's conduct was an intentional tort.

It is undisputed that under the Allstate policy, Allstate would have a duty to defend and be liable for a pure negligence suit. Likewise, it is undisputed that Allstate would have no duty to defend and would not be liable for a pure intentional tort suit. Here, there are allegations of both. Allstate argues that based on the Nonnenmocher suit it had no duty to defend because of the intentional tort allegations. Allstate is wrong.

The Virginia Supreme Court, in *Brenner v. Lawyers Title Ins. Corp.*, stated:

> The insurer's obligation to defend is broader than its obligation to pay. *Lerner v. General Ins. Co. of America*, 219 Va. 101, 104, 245 S.E.2d 249, 251 (1978). The obligation to defend arises whenever the complaint against the insured alleges facts and circumstances, *some of which*, if proved, would fall within the risk covered by the policy.

*Id.* However, if it appears *clearly* that the insurer would not be liable under its contract for *any judgment* based upon the allegations, "it has no duty even to defend." *Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978). The duty to defend is to be determined initially from the allegations of the complaint. But if it is doubtful whether the case alleged is covered by the policy, *the refusal of the insurer is at its own risk. London Guar. Co. v. White & Bros., Inc.*, 188 Va. 195, 199-200, 49 S.E.2d 254, 256 (1948). And, if it be shown subsequently upon development of facts that the claim is covered by the policy, the insurer necessarily is liable for breach of its covenant to defend. *Id.* at 200, 49 S.E.2d at 256.

240 Va. 185, 189, 397 S.E.2d 100, 102 (1990) (emphasis added).

Allstate makes the bold assertion that "[n]otwithstanding the legal allegations of negligence, the facts alleged in the [Nonnenmacher suit] leave no doubt that when Gatewood 'drove his vehicle directly' at the plaintiff's vehicle, he acted intentionally." Allstate Insurance Company's Supplemental Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, p. 2. The Court finds that the Nonnenmacher suit left much in doubt. First, the language Allstate cites is, at best, inconclusive. "Directly" is used as an adverb to describe the path taken erratically. Second, and more telling, is an examination of Ms. Nonnenmacher's Motion for Judgment filed against Mr. Gatewood in its entirety. Paragraph five states: "At the time defendant had been drinking alcoholic beverages and was under the influence of alcohol. He failed to keep his vehicle under proper control. As a result of his *negligence*, plaintiff and her daughter sustained injury." Motion for Judgment, Law No. 9999 (emphasis added). Paragraph seven states: "In the *alternative*, defendant intended to injure plaintiff and her child." *Id.* (emphasis added).

The Court finds that Ms. Nonnenmocher alleged "facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Lerner*, 219 Va. at 104, 245 S.E.2d at 251. Thus, Allstate had a duty to defend and its refusal was "at its own risk." *London Guar. Co.*, 188 Va. at 200, 49 S.E.2d at 256. The present facts fit squarely into the language quoted at the beginning of this section, and, because Allstate did not defend Mr. Gatewood, it breached its duty to defend.

The general rule is that an insurer's unjustified refusal to defend the insured makes the insurer liable for the breach of its duty to defend. *London Guar. Co.*, 188 Va. at 200, 49 S.E.2d at 256. See also, C. T. Drechsler, Annotation, *Consequences of Liability Insurer's Refusal to Assume Defense*

*of Action Against Insured Upon Ground That Claim Upon Which Action is Based is Not Within Coverage of Policy*, 49 A.L.R.2d 694 (1956).[1] Beyond the blanket statement of liability, the specific consequences of an insurer's breach are not clearly delineated. Neither party has cited Virginia law that is dispositive, nor has the Court uncovered any Virginia case law that is directly on point. However, as the discussion will show, case law and sound logic supports the result that Allstate is liable for the amount of the judgment, interest thereon, costs, and expenses incurred in the defense of Mr. Gatewood.

In *London Guar. Co. v. White & Bros., Inc.*, 188 Va. 195, 49 S.E.2d 254 (1948), Mrs. Gurganus had filed suit against White & Bros., Inc., for injuries she sustained when she fell over a lump of coal on the sidewalk that had been left there by White. White's insurer, London Guarantee, refused to defend the action, and the suit was settled at a cost to White of $613.50. *Id.* at 197. This case arose when White brought suit against his insurer, London Guarantee, for reimbursement of the judgment. London Guarantee argued that Mrs. Gurganus' suit was not covered under the policy. The Court addressed the theories dealing with "loading and unloading" clauses in insurance policies and decided that the "complete operation" doctrine was to be applied, as opposed to the "coming to rest" doctrine. *Id.* at 201-04. The Court then held that under the "complete operation" doctrine, Mrs. Gurganus' suit and liability arising out of the settlement were covered under White's policy with London Guarantee. *Id.* at 205-06. Thus, the Court affirmed judgment of the trial court that London Guarantee was obligated to reimburse White for the $613.50. It should also be noted that under the rejected doctrine of "coming to rest," London Guarantee may not have been liable. Implicit in the Court's reasoning is the notion that it is irrelevant what the basis for the insurer's refusal is; the only inquiry is whether a reviewing court later finds that the insurer's refusal was mistaken. Also, London Guarantee was not given the opportunity to relitigate the case under the "complete operation" doctrine.

The similarity between *London Guar.* and the present matter are striking. Mrs. Gurganus and Ms. Nonnenmocher both filed suit against insureds. The insurers both refused to defend the action under a claim that the suit was not covered under the policy. The Virginia Supreme Court found that London Guarantee was wrong concerning coverage and required it to reimburse the

---

[1] Section 7 state: "Thus, all the cases agree that where it is the insurer's duty to defend, and the insurer wrongfully refuses to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of contract which renders it liable to the insured for all damages resulting to him as a result of such breach." (collecting cases).

judgment. Here, the Court has found that Allstate's claim of policy exclusion was wrong, and it follows that Allstate must reimburse Erie for Erie's satisfaction of the judgment.

The annotation cited above, collecting a large number of cases and citing to *London Guar. Co. v. White & Bros., Inc.*, 188 Va. 195, 49 S.E.2d 254 (1948), states:

> The first and most obvious of the positive obligations created by an insurer's unjustified refusal to defend is its obligation to pay the amount of the judgment rendered against the insured or any settlement made by the insured of the action brought against him by the insured party. Thus, it appears to be well settled that if an insurer unjustifiably fails to defend an action against the insured on the ground that the claim upon which the action against the insured was based is outside the coverage of the policy, and the insured thereupon undertakes the defense of the action, the insurer is liable for the amount of the judgment obtained in such action against the insured or of the settlement made by the latter.

49 A.L.R. 2d 694, § 10. The annotation, supported by a large number of cases, also states:

> The second of the positive obligations created by the insurer's unjustified refusal to defend an action against the insured, on the ground that the claim upon which the action was brought was outside the coverage of the policy, is its obligation to pay the insured all the expenses he incurred in making such defense himself, including his court costs and attorney fees, as well as other reasonable expenses paid by him. Thus, all the cases agree that the insurer in such a situation is liable to the insured for the reasonable and necessary expenses which the insured has incurred in conducting the defense.

49 A.L.R. 2d 694, § 12.

The United States District Court for the Eastern District of Virginia in *Safeway Moving and Storage Corp. v. Aetna Ins. Co.*, applying Virginia law in a diversity action, stated:

> A breach of the covenant to defend has several consequences, not the least of which is to pay the amount of the judgment up to the policy limits, and a reasonable amount expended by the insured for

attorney's fees. Also, the plaintiff is entitled to interest in an amount equal to the liability limits of the policy from the date which it became legally obligated to pay.

317 F. Supp. 238, 246 (E.D. Va. 1970), modified on other grounds, 452 F.2d 79 (4th Cir. 1971) (citations omitted).

As the above principles make clear, there are also limits to the consequences. The insurer's liability does not exceed the policy limits. *Id.*, see also, 49 A.L.R.2d 694, § 11 ("[A] wrongful refusal of the insurer to conduct the defense of an action based upon a claim within the coverage of the policy does not have the effect of exposing it to a greater liability to the insured than the limit of the amount stated in the policy.") Allstate argues that this case involves an attempt to extend coverage of the insurance policy to matters not covered by the policy, relying on *Norman v. Insurance Co. of N. Am.*, 218 Va. 718, 239 S.E.2d 902 (1978). However, neither the Court nor Erie is attempting to transform the Allstate policy into something that it is not.

Allstate had a duty to defend the Nonnenmocher suit, and Allstate breached its duty to do so. The risk that Allstate took was that there would be a judgment that is covered by the policy. Such a judgment was entered against the insured, Mr. Gatewood, and requiring Allstate to satisfy the judgment is not an extension of the Allstate policy.

Allstate argues that it now has the right to litigate the issue of whether Mr. Gatewood's conduct was intentional and thus excluded from policy coverage. The Court finds that Allstate cannot seek adjudication of whether Mr. Gatewood's conduct was intentional or negligent.

An important declaration must be kept in mind throughout the following discussion: "the refusal of the insurer is at its own risk." *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990) (citing *London Guar. Co. v. White & Bros., Inc.*, 188 Va. 195, 199-200, 49 S.E.2d 254, 256 (1948)), see also, *Lerner v. General Ins. Co.*, 219 Va. 101, 104, 245 S.E.2d 249, 251-52 (1978). This statement must mean something and should not be read as mere surplusage. The Court believes that the statement reveals the Virginia Supreme Court's intent to hold insurers accountable for their wrongful or mistaken refusals to defend and that the insurers must be prepared, when they take such action, to find themselves liable for judgments or settlements that are handed down. Giving insurers, such as Allstate, a second chance would undermine the rules discussed in the preceding two sections. Furthermore, as a policy matter, allowing Allstate to contest coverage at this stage, when it did absolutely nothing (i.e., no reservation of rights letters, no nonwaiver agreements, no declaratory judgment actions) would give

insurers the opportunity to do exactly what Allstate did (or did not do) and make matters of this sort unnecessarily lengthy and uncertain. Beyond these general views, as the discussion below reveals, the Court has found additional authority to base its decision on.

In *Liberty Mutual Ins. Co. v. Eades*, 248 Va. 285, 448 S.E.2d 631 (1994), Ms. Eades brought a personal injury suit against Dana Veazey arising out of an incident in which Ms. Eades, a pedestrian, was struck by an automobile driven by Ms. Veazey. The automobile was insured under Ms. Veazey's father's name, and the insurer was Liberty Mutual. The insurer refused to provide coverage and "simply took no part in the tort action." *Id.* at 286-87, 448 S.E.2d at 632. The Court also specifically notes that "the insurer did not seek adjudication of the coverage question by declaratory judgment, nor did it undertake to furnish Veazey a defense under a reservation of its rights later to deny coverage." *Id.* at 287, 448 S.E.2d at 632. Subsequently, Ms. Eades and the insured settled the case for $40,000.00 plus interest, and the trial court properly entered a judgment. The insurer refused to satisfy the judgment, and Veazey and her father assigned to Eades all rights, claims, and causes of action existing in their favor against the insurer. *Id.*, Eades then brought suit against Liberty, the insurer.

The trial court rules that "the insurer was not permitted to challenge the reasonableness of the amount of the judgment, unless it could prove fraud or collusion." *Id.* at 288, 448 S.E.2d at 632. Thus, the trial dealt with the issues of coverage and collusion, and the jury found in favor of the plaintiff. Judgment was then entered against Liberty, the insurer, for $40,000.00 plus interest and costs. *Id.*

The Virginia Supreme Court addressed the issue of "whether the insurer properly could collaterally attack the reasonableness and prudence of the amount of a stipulated judgment entered into in another court proceeding in which the insurer was not a party and did not participate in any way." *Id.* at 288, 448 S.E.2d at 632-33. The Court first rules that a consent judgment entered upon a stipulation of the parties "has substantially the same effect as any other judgment, is conclusive of the matters adjudicated, is not subject to collateral attack except upon jurisdictional grounds or for fraud or collusion, and is entitled to full faith and credit in a sister state." *Id.* at 288, 448 S.E.2d at 633 (citation omitted). The Court also stated: "The law is settled that whenever a judgment has been recovered against a party who clearly qualifies within the provisions of such a policy as an insured, then the liability of the insurer is definitely fixed, unless fraud or collusion is shown in the procurement of the judgment." *Id.* at 289, 448 S.E.2d at 633. In the end, the

Court held that the insurer could not collaterally attack the judgment previously entered upon stipulation.

Clearly, there are some crucial distinctions between *Liberty Mutual Ins. Co.* and the present matter, and the Court would be remiss if it does not state forthright that *Liberty*'s holding is not directly on point. In *Liberty*, the insurer was allowed to litigate the issue of coverage but not the "reasonableness and prudence of the amount" of the judgment. The issue of coverage in *Liberty* had never been litigated, which involved claims of improper ownership information in the application for the policy and that the policy did not cover family members of the insured. *Id.* at 286-87, 448 S.E.2d at 632. Here, on the other hand, the issue of Mr. Gatewood's conduct was previously litigated. Instead of attempting to attack the amount of the judgment, Allstate seeks to attack the nature of the jury's finding. The Court finds no principled distinction between an attack upon the reasonableness of an amount of a judgment and the reasonableness of the nature of a judgment. The jury found that Mr. Gatewood acted negligently, and liability arising from this finding is covered under the Allstate policy. In addition, Allstate has not alleged collusion or fraud in the fact that the intentional tort claims were stricken.

Allstate argues that it is not collaterally estopped from contesting coverage under *State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286, 497 S.E.2d 844 (1998). The specific issue addressed in *State Farm* was "whether the trial court properly determined that an insurer was estopped from litigating whether its insured's acts were negligent or intentional based on a judgment in a prior tort action in which the insurer provided the insured a defense under a reservation of rights." *Id.* at 288, 497 S.E.2d at 845. The Court found that under the doctrine of collateral estoppel, State Farm was not barred from litigating the conduct issue because State Farm was not a party in the tort litigation and no privity existed between it and the insured. *Id.* at 290, 497 S.E.2d at 846. Under the law set forth in *State Farm*, it is clear that Allstate is not collaterally estopped from litigating whether Mr. Gatewood's conduct was intentional or negligent.

However, *State Farm*'s disposition of the collateral estoppel issue does not end the inquiry. *State Farm* is distinguishable on two crucial grounds that opens the door for more analysis beyond collateral estoppel. First, State Farm, the insurer, provided the insured a defense. Thus, there was no breach of the insurer's duty to defend. Second, the insurer had issued a valid reservation of rights letter. The *State Farm* Court, aside from collateral estoppel, addresses the "other forms of estoppel." *Id.* at 290, 497 S.E.2d at 846. The Court stated:

Under the principles of estoppel and waiver, providing the insured a legal defense generally makes the insurer liable for amounts recovered against the insured because the insurer's actions indicate that the policy coverage applies, and therefore, the insurer is estopped from subsequently seeking to avoid liability under the policy. If an insurer provides a reservation of rights, however, the insurer is not deemed to have waived, nor be estopped to set up, the defense of lack of coverage because of its participation in the tort litigation. As the trial court acknowledged, [the insurer] provided [the insured] a defense under a reservation of its right to later assert its defenses to coverage under the policy, and thus, these principles of estoppel and waiver are inapplicable.

*Id.* at 291, 497 S.E.2d at 846-47 (citations and quotations omitted). The *State Farm* Court stresses the fact that there was a reservation of rights letters; it is mentioned in the issue, throughout the opinion, and as a precondition for the nonapplicability of the principles of waiver and estoppel, as shown in the above quote. See also, *Norman v. Insurance Co. of N. Am.*, 218 Va. 718, 726, 239, S.E.2d 902, 907 (1978) ("It is not necessary for an insurer, operating under a waiver of rights reservation, to wait and see if it is liable under the policy.") Here, Allstate did nothing to protect itself by way of reservation of rights letters, declaratory judgments, or nonwaiver agreements. On this basis, the Court may consider whether Allstate has waived its right to contest the nature of Mr. Gatewood's conduct. See, 49 A.L.R.2d 694, § 17: "Insurance company which refuses to defend action under circumstances where it has duty to do so is bound by facts determined in trial of such action." (citing *Hartford Acci. & Indem. Co. v. Villasenor*, 21 Ariz. App. 206, 517 P.2d 1099 (1974)); "Failure of motorist's liability carrier to defend motorist in action brought by bicyclist who was struck by insured's car did not constitute a waiver of liability carrier's right to deny coverage; failure to defend only constituted waiver of opportunity to contest insured's negligence." (citing *Moore v. State Farm Mut. Ins. Co.*, 196 Ga. App. 755, 397 S.E.2d 127 (1990)).

Taking as a whole that an insurer's refusal to defend is at its own risk, the consequences of a breach of duty to defend, the importance the Virginia Supreme Court has placed on insurers following well-established steps, such as reservation of rights letters and the existence of a valid judgment devoid of any fraud or collusion, the Court finds that under the principles of waiver and estoppel, Allstate does not have the right to litigate whether Mr. Gatewood's conduct was intentional or negligent. It should be stressed that Allstate took

the ultimate risk in refusing to defend Mr. Gatewood and doing nothing to protect its interests. Under these facts, Allstate is not entitled to "have its day in court."

The Court finds that viewing the facts most favorably for the Defendant, Allstate is obligated to pay $54,723.35 (judgment amount, plus interest, plus costs) and any additional interest or costs the Court may find at a later date.