## CIRCUIT COURT OF WARREN COUNTY

Erie Ins. Exchange et al.

v.

State Farm Mutual
Auto. Ins. Co. et al.

December 16, 2002

Case No. (Chancery) 02-161

BY JUDGE JOHN E. WETSEL, JR.

This declaratory judgment action came before the Court on December 13, 2002, for trial. This is a dispute among insurance carriers as to their respective responsibilities arising from an accident in which a pedestrian police officer was injured when he was struck by a police car beside which he was standing when that car was hit by a car driven by Rebecca Bowler as she attempted to escape from the police. Jack A. Robbins, Jr., Esquire, appeared for State Farm Mutual; Elizabeth M. Ayyildiz, Esquire, appeared for Erie Insurance and the Virginia Municipal Liability Pool; C. Casey Struckmann, Esquire, appeared for Jesse Dove; and Rebecca Bowler appeared in person without counsel.

On December 11, 2002, the Court heard Erie's Motion for Summary Judgment and determined that State Farm had a duty to defend Rebecca Bowler until the issue of whether Rebecca Bowler had intentionally injured Jesse Dove had been determined, which was the issue heard at the trial on December 13. After consideration of the evidence and the argument of the parties, the Court has determined that Rebecca Bowler did not specifically intend to injure Jesse Dove at the time in question; therefore, the incident was an accident within the meaning of the State Farm automobile liability policy in

question, so that State Farm must provide a defense and must also provide coverage under its policy for the Dove accident.

## I. *Findings of Fact*

The following facts have been admitted by the parties or found by the greater weight of the evidence.

Erie Insurance Exchange issued an automobile insurance policy, which was in force at the time of the accident in question and which insured Jesse Dove, who is a police officer who was injured while on foot when he was struck by a police car which had been hit by a car driven by Rebecca Bowler.

Virginia Municipal Liability Pool is a municipal liability pool, which also provides UM/UIM coverage to Jesse Dove at the time of the accident, because he was an employee of the Town of Front Royal when he was injured.

State Farm Mutual Automobile Insurance Company issued to Randall Bowler, husband of Rebecca Bowler, an automobile insurance policy which covers the time in question and which specifically insured the 1999 Toyota which Rebecca Bowler was driving when she injured Jesse Dove.

Jesse Dove filed a Motion for Judgment in this Court against Rebecca Bowler, Warren County Law No. 01-235, the "underlying case." In the underlying case, Officer Dove alleges that on January 6, 2000, Rebecca Bowler negligently operated a vehicle in Front Royal in an alleyway parallel to South Royal Avenue, causing him injury. There are no allegations of intentional conduct in the underlying case.

Erie and Virginia Municipal filed responsive pleadings in the underlying case pursuant to their obligations as potential uninsured and underinsured carriers pursuant to Virginia Code § 38.2-2206.

State Farm was provided timely notice of the Motion for Judgment and filed responsive pleadings in its own name. However, State Farm has filed no pleadings on behalf of Rebecca Bowler and has not provided Rebecca Bowler a defense to the claims asserted against her in the underlying Motion for Judgment, which refusal has given rise to this declaratory judgment action.

At the time of the January 6, 2000, accident, Officer Dove was acting within the scope of his employment with the Town of Front Royal Police Department. The vehicle operated by Rebecca Bowler at the time of the January 6, 2000, accident was the 1999 Toyota insured by State Farm. As a permissive user of the 1999 Toyota, Rebecca Bowler was an insured under the State Farm Policy. At about 1:00 p.m. on January 6, 2000, Rebecca Bowler went to the Eagle's Club, a private club in Front Royal. Over the next 3½

hours, Rebecca Bowler consumed approximately ten to fifteen 12-ounce beers. She also had taken a prescription anti-depressant, Paxil, earlier in the day.

On January 6, 2000, Rebecca Bowler's mother, Janet Taylor, went to the Eagle's Club because she was called about Rebecca Bowler's conduct. When Taylor arrived and saw her daughter, Bowler's speech was slurred. Mrs. Taylor tried unsuccessfully to stop Bowler from driving. Linda Jenkins, Janet Taylor's aunt, was at the Eagle's Club and saw Rebecca Bowler drinking heavily all afternoon. Rebecca Bowler was upset, her speech was slurred, and she did not walk straight. Jenkins tried to take Bowler's keys, but she was unsuccessful, and Bowler drove off.

Shortly before 5:00 p.m. on January 6, 2000, the Front Royal Police Department received a complaint that Rebecca Bowler was repeatedly calling and threatening Robin Johnson. Officer Figgins promptly responded to the call and went to Johnson's apartment. While Officer Figgins was there, Rebecca Bowler called five to six times. Officer Figgins spoke to Rebecca Bowler, who cursed him.

In response to complaints about Bowler's conduct, sometime after 5:00 p.m., Officer Figgins went to the Eagle's Club to try to speak to Rebecca Bowler. When he arrived at the Eagle's Club, Officer Figgins saw a white female leave the Eagle's Club, get into a car, and drive off. Officer Figgins called in the number of the license plate of the car which drove off and learned that it was registered to Bowler's husband.

Shortly after 6:00 p.m., Robin Johnson called the dispatcher and reported that Rebecca Bowler was in the alley behind her apartment.

Officer Figgins went to the alley. When he arrived, Rebecca Bowler was parked in a parking space, with the nose of her car perpendicular to the building. Figgins pulled his police cruiser into a parking space one space beyond the Bowler car. Officer Cortes' vehicle was sitting in the alley, a short distance to the rear and perpendicular to Rebecca Bowler's car. See Court Exhibit 1. Officer Cortes, who was out of his vehicle standing by Bowler's driver's window, yelled at Rebecca Bowler to get out of the car, he banged on her window with his flashlight, but Bowler refused to get out of her car. Officer Figgins exited his vehicle, walked up to Bowler's car, and stood alongside Cortes, and he also asked her to exit, and she refused. Figgins attempted to use a "slim jim" to try to open Bowler's locked driver's car door, but Bowler held down the lock, meanwhile Cortes was trying to break the driver's window with his flashlight.

Rebecca Bowler cursed at the officers when they requested that she exit her car. She was highly intoxicated, her eyes were bloodshot, she slurred her

words, and she rocked back and forth in her seat. At one point, she placed her head on the steering wheel and began crying.

She became highly agitated and started looking around. Rebecca Bowler then revved her engine and put her car into reverse. Officer Figgins got into Officer Cortes' vehicle, which was parked in the alley slightly behind Bowler's car, to try to move Cortes' car. When Bowler backed up trying to get out of her parking space, she hit Officer Cortes' car, and Officer Figgins exited that car. Officers Figgins and Cortes then retreated from the near proximity of Bowler's car.

Continuing her efforts to escape and exit the alley, Bowler then pulled forward and hit Officer Figgins' car, which was parked in a parking space one space away from Bowler's parking space. After hitting Figgins' car, she reversed and hit a civilian car parked in the space to the immediate right of the space in which she had been originally parked; then Bowler went forward hitting Figgins' car again; she then backed up again hitting the civilian car; then she went forward hitting Figgins' car again; and then she backed into Officer Cortes' car, to which she became stuck.

Rebecca Bowler accelerated rapidly to try to break free of Cortes' car, but the vehicles were locked. Bowler's wheels were spinning, causing a significant amount of smoke. At this point Officer Dove arrived at the scene. Dove ran up to the passenger side of Bowler's vehicle and ordered Bowler to exit, which Bowler refused, Bowler's tires were spinning incessantly, Dove then walked toward the front of Bowler's car, which suddenly broke loose from Officer Cortes' car and lurched forward. Dove ran to get out of the way, running around the front or over the hood of Figgins' car to the far side of the Figgins vehicle, at which time Bowler's vehicle for the fourth time struck Officer Figgins' car, and the impact knocked Dove into the building. Bowler continued to accelerate pushing Figgins' car, so that it pivoted, allowing her car to at last pass along the rear of Figgins' car so that she could proceed down the alley and escape. Rebecca Bowler drove rapidly out of the alley. After leaving the alleyway, Bowler was involved in another motor vehicle accident.

Rebecca Bowler does not recall anything that happened after her last beer. She only recalls a general sense of being afraid and wanting to get away.

On June 2, 2000, Bowler pleaded guilty in the Circuit Court of Warren County to the felonies of Destruction of Property, Hit and Run, and Assault and Battery of a Police Officer, Officer Zeimer was the victim of this crime, which was based on Bowler's conduct incident to her arrest at her home after the accident.

The State Farm Policy provides in relevant part:

## PART I - LIABILITY

COVERAGE A - Bodily Injury Liability;

COVERAGE B - Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";

arising out of the ownership, maintenance, or use of the owned automobile or any non-owned automobile, *and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent....*

(Italics added.)

State Farm has refused to provide Rebecca Bowler a defense in the underlying case and has taken the position that it has no obligation to indemnify her even if the allegations are proven at trial, relying on the following exclusion in the State Farm Policy:

This policy does not apply under Part I ... to bodily injury or property damage caused intentionally by or at the direction of the insured....

State Farm has provided coverage for the accident which Rebecca Bowler caused after she left the alley.

## II. *Conclusions of Law*

There are two issues to be resolved in this declaratory judgment action. The first is whether State Farm has a duty to defend the underlying action, and the second is whether Rebecca Bowler intended to harm Officer Dove, because, if she did, her intentional act is not covered by the State Farm policy. At the outset, it should be noted that the insurance company's

"obligation to defend is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy."

*Lerner v. Safeco*, 219 Va. 101, 104, 245 S.E.2d 249, 251 (1978). In *Lerner*, we went on to say "that such a provision [to defend] places no obligation on the insurer to defend an action against the insured when, under the allegations of the complaint, it would not be liable under its contract for any recovery therein had." *Id.* (citing *Travelers Indem. Co. v. Obenshain, Committee*, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978)). In addition, we have explained that, "If it is doubtful whether the case alleged is covered by the policy, the refusal of the insurer to defend is at its own risk. *London Guar. Co. v. White & Bros., Inc.*, 188 Va. 195, 199-200, 49 S.E.2d 254, 256 (1948). And, if it be shown subsequently upon development of the facts that the claim is covered by the policy, the insurer necessarily is liable for breach of its covenant to defend." *Id.* at 200, 49 S.E.2d at 256.

*Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990). See, e.g. *Erie Ins. Co. v. Allstate Ins. Co.*, 50 Va. Cir. 61 (Augusta 1999).

To determine whether an insurer has a duty to defend, a court applies the "eight corners rule" (four corners of the policy and four corners of the complaint) and looks solely at the policy language to ascertain the terms of the coverage and at the allegations in the underlying action to determine whether any claims alleged therein are covered by the policy. *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 465 (E.D. Va. 2002); see also *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983) (insurer is relieved of a duty to defend only when it clearly appears *from the initial pleading* that the insurer would not be liable under the policy for any judgment based upon the allegations).

The State Farm Policy clearly provides that State Farm "shall defend any suit alleging such bodily injury or property damage … even if any of the allegations of the suit are groundless, false, or fraudulent." The underlying Motion for Judgment alleges that Rebecca Bowler negligently operated a vehicle in the Town of Front Royal in an alleyway parallel to South Royal Avenue, causing Officer Dove injury. State Farm has a clear duty to defend Rebecca Bowler in the underlying action, even if those "allegations are groundless, false, or fraudulent."

State Farm is obligated to defend Rebecca Bowler in the underlying litigation until it is concluded, which it may do under a reservation of rights. If State Farms fails to provide Rebecca Bowler with a defense, such refusal would be wrongful, and State Farm will have a duty to indemnify Rebecca Bowler. See *Safeway Moving & Storage Corp. v. Aetna Ins. Co.*, 317 F. Supp.

238, 246 (E.D. Va. 1970) (breach of the covenant to defend has several consequences, not the least of which is to pay the amount of the judgment up to the policy limits); see also *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990) (refusal of insurer to defend is at its own risk); and *Erie Ins. Exch. v. Allstate Ins. Co.*, 50 Va. Cir. 61 (1999) (Allstate obligated to pay judgment in underlying case where it refused to provide a defense).

The authority to enter a declaratory judgment is discretionary and must be exercised with great care and caution. *Hoffman Family, L.L.C. v. Mill Two Assoc.*, 259 Va. 685, 693, 529 S.E.2d 318, 323 (2000). Although the question of whether State Farm has a duty to defend Ms. Bowler was ripe for determination by summary judgment, the issue as to whether Rebecca Bowler specifically intended to injure Officer Dove had to be determined from the facts, which was the reason for this trial.

The burden is on State Farm to prove the applicability of an exclusion upon which it relies. *White v. State Farm*, 208 Va. 394, 396, 157 S.E.2d 925, 927 (1967). Language in an insurance policy purporting to exclude coverage will be construed most strongly against State Farm. *St. Paul Ins. v. Nusbaum & Co.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984). The State Farm Policy excludes coverage for "bodily injury caused intentionally by or at the direction of the insured." The language of the State Farm Policy is narrower than some automobile liability policies, which also exclude from coverage "expected" as well as intentional injuries. See, e.g., *Johnson v. Insurance Co. of North Am.*, 232 Va. 340, 350 S.E.2d 616 (1986) (policy excluded coverage for "bodily injury or property damage which is *either expected or intended* from the standpoint of the insured.") (Emphasis added.)

"Whether a particular intentional act is excluded from coverage ... depends upon the subjective intent of the insured, which is ordinarily a question of fact." 7 Am. Jur. 2d, *Automobile Insurance*, § 158. The State Farm policy excludes coverage for "bodily injury caused intentionally by ... the insured." Therefore, the litmus inquiry in this case is whether Rebecca Bowler had the specific intent to cause bodily injury to Officer Dove at the time of the accident. See *Johnson*, 232 Va. at 345, 350 S.E.2d at 619. As the Supreme Court noted in *Infant C. v. Boy Scouts of Am.*, 239 Va. 572, 582-83, 391 S.E.2d 322 (1990):

> There is a substantial difference between willful and wanton conduct, on one hand, and intentional misconduct on the other. An actor guilty of intentional misconduct must intend to cause harm to another. See, e.g., *Johnson v. Insurance Co. of No. America*, 232 Va. 340, 350

S.E.2d 616 (1986) (actor understood nature and consequences of his conduct and had purpose and volition to cause injury). An actor guilty of willful and wanton conduct intends his act, but not the resulting harm. See, e.g., *Booth, supra* (drunken driver guilty of willful and wanton conduct even though lacking ill-will, malice, or intention to cause harm).

"Intentional misconduct and recklessness contrasted. Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results." Restatement (Second) of Torts § 500, comment f (1965).

An actor guilty of intentional misconduct must intend to cause harm to another. See, e.g., *Johnson v. Insurance Co. of No. Am.*, 232 Va. 340, 350 S.E.2d 616 (1986) (actor understood nature and consequences of his conduct and had purpose and volition to cause injury). An actor guilty of willful and wanton conduct intends his act, but not the resulting harm. See e.g., *Booth v. Robertson*, 236 Va. 269 (1988) (drunken driver guilty of willful and wanton conduct even though lacking ill-will, malice, or intention to cause harm); and *Morris v. Travelers Indemnity Co.*, 31 Va. Cir. 306 (1993) (actor was guilty of willful and wanton conduct but did not intend the harm that resulted from conduct, a shooting, but shooting was excluded from coverage because that policy excluded injuries which are "expected" as opposed to "intended" as in the State Farm policy in the case at bar).

There is no question but that Rebecca Bowler intended to cause property damage to Officer's Figgins' car; she had rammed it three times before Officer Dove ever arrived on the scene. However, Rebecca Bowler had no specific intent to injure Officer Dove; he was simply inadvertently caught in the action as Bowler tried repeatedly and clumsily to work her car out of its parking place so that she could escape. Dove's injury was the unintended result of her intentional act of ramming Figgins' car for the fourth and final time. She did not directly strike Officer Dove, nor did she intend to injure him, and had he chosen a different point of refuge, he may not have been injured at all, as illustrated by the fact that prior to his arrival, Officers Figgins and Cortes had distanced themselves from Bowler's vehicle when she began her back and

forth ramming in an effort to extricate her car from her parking place. While she was clearly at least negligent with respect to Officer Dove, she did not intend to specifically injure him while she was attempting to escape. Nor can coverage be excluded because Bowler may have intended to cause damage to the parked vehicles into which she drove.

> An exclusion for intentionally caused injury applies when the insured intended to cause not only the event that resulted in the injury or harm, but also the resulting injury or harm itself. It is not sufficient that the insured's intentional, albeit unlawful, acts have resulted in unintended harm.

7 Am. Jur. 2d, *Automobile Insurance*, § 158.

Dove's injury was the unintended consequence of Bowler's intentional act of ramming Figgins' car, and the State Farm Policy could have been written to exclude any bodily injury caused by an intentional act of the insured, whether the injury was intended or not, but it did not do so; therefore, it is bound by the clear language in its policy. See *Allstate Ins. Co. v. Shirah*, 466 So. 2d 940, 945 (1985) (intentional acts exclusion with same language as case at bar held not to exclude injury to a police officer who was injured when the injured, attempting to avoid "rolling roadblock," swerved to avoid one officer an ran into the injured officer's vehicle).

Since Rebecca Bowler did not specifically intend to harm Officer Dove or anybody else that evening when her car broke free, there is no issue of transferred specific intent to harm. The State Farm exclusion for "bodily injury or property damage caused intentionally by or at the direction of the insured" *does not apply to the facts of this case insofar as Dove's personal injuries are concerned.* Therefore, the incident is an accident covered by the State Farm policy.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. At the time of the January 6, 2000, accident, Rebecca Bowler was an insured under the State Farm Mutual Insurance Company Policy 6226-560-460.

2. The January 6, 2000, accident involving Rebecca Bowler and Jesse Dove was an accident within the meaning of the State Farm Mutual Insurance Company Policy 6226-560-460; so, State Farm must provide Rebecca Bowler with a defense in the underlying personal injury action, *Dove v. Bowler*, Warren County Law No. 01-235, and must also provide coverage under the terms of its policy for the Dove accident.