# CIRCUIT COURT OF THE CITY OF NORFOLK

Jessica Merrill et al.

v.

Interstate Ins. Group et al.

June 26, 2001

Case No. (Law) L99-966

BY JUDGE JOSEPH A. LEAFE

This matter comes before the Court on the parties' Post-Trial Memorandums dealing with the issue of insurance coverage for the defendant, Benita Dawn Miller. The case began when the plaintiff, Jessica Merrill, sustained personal injuries from a fall at a cheerleading camp conducted at Arcadia High School and sponsored by Cheer Virginia, Inc., allegedly due to a defective and worn tumbling mat. In 1996, Cheer Virginia contracted to conduct a cheering camp for Arcadia's cheerleaders. Benita Miller was the cheering coach at Arcadia High School at that time. Ms. Miller actually executed the contract with Cheer Virginia as the "Organizational Representative of Arcadia High School and Accomack County." Ms. Miller arranged the camp for the cheerleaders, and she was present during the camp.

In May of 1997, plaintiffs filed suit against Cheer Virginia, Inc., seeking damages for the injuries. Thereafter, plaintiffs filed an Amended Motion for Judgment ("AMFJ") adding Bonita Dawn Miller as a defendant. Cheer Virginia filed their answer and grounds of defense; however, no response was filed by or on behalf of Ms. Miller. In December 1999, plaintiff nonsuited Cheer Virginia, Inc., and chose to proceed solely against Ms. Miller. On March 17, 1999, a Default Judgment was entered against Ms. Miller in the

Circuit Court of the County of Accomack. The judgment was rendered in favor of the infant plaintiff in the amount of $100,000 and in favor of the parents in the amount of $7,580. The present action alleges that Ms. Miller is covered under one or both of the insurance policies at issue, Nationwide Property and Casualty Insurance Company, insurer of the School Board of Accomack's employees, and Interstate Insurance Group, insurer of Cheer Virginia. Both insurance companies deny coverage. Neither of the insurance companies were parties to the default judgment proceeding.

As an initial matter, the Court must determine what effect, if any, the default judgment rendered against Ms. Miller has in this proceeding. Plaintiffs contend that the judgment against her binds Interstate in the present matter because an insurer has a duty to defend and a refusal to do so is at the insurer's own risk. *London Guarantee Co. v. White and Brothers, Inc.*, 188 Va. 195 (1948). Plaintiffs assert that Interstate was on actual notice of the allegations against Cheer Virginia in the AMFJ, which, if proved, placed Ms. Miller within coverage under the policy. Therefore according to the plaintiffs, since the AMFJ contained allegations that Ms. Miller was acting on behalf of Cheer Virginia, Interstate should not be allowed to "relitigate" the validity of such allegations. The provision of the Interstate policy dealing with the duty to defend states that "The Company shall have the right and duty to defend any suit against the INSURED seeking DAMAGES *to which this insurance applies.*" Interstate argues that in its response to the AMFJ, Cheer Virginia denied that Ms. Miller was its employee, volunteer, or agent at the time of the incident, essentially denying that the insurance applied to Ms. Miller. Interstate was in fact defending Cheer Virginia, its named insured. When the default judgment was entered against Ms. Miller, Cheer Virginia had already been voluntarily nonsuited and Ms. Miller never requested that Interstate provide her a defense. Apparently, the plaintiffs did not serve Interstate, but counsel for Cheer Virginia forwarded copies of the Amended Motion for Judgment when they were served on Cheer Virginia.

Collateral estoppel precludes parties to a prior action and their privies from relitigating in a subsequent action any factual issues that were actually litigated and essential to a valid and final judgment in the prior action. *Glasco v. Ballard*, 249 Va. 61, 64, 452 S.E.2d 854 (1995). In order for collateral estoppel to apply, the following elements must be met: (a) the parties to the prior and subsequent litigation must be the same or the requisite privity must exist between them; (b) the factual issues sought to be litigated in the present case must have been "actually litigated" in the prior action; (c) the factual issues decided must be essential to the prior judgment; (d) the prior action must have resulted in a final and valid judgment against the party to whom the

doctrine is sought to be applied, and (e) "mutuality." *Angstadt v. Atlantic Mutual Ins. Co.*, 249 Va. 444, 446-47, 457 S.E.2d 86 (1995). In order for privity to exist for purposes of collateral estoppel, the party's interests must be so identical with another that he represents the same legal right. *State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286, 497 S.E.2d 844 (1998). Whether privity exists requires a careful examination of the totality of circumstances in a given case. *Id.* at 289-90, citing *Angstadt*, 249 Va. at 447.

In *State Farm v. Mabry*, the issue on appeal was whether the trial court properly determined that the insurer was estopped from litigating whether the insured's acts were negligent or intentional based on a judgment in a prior tort action. 255 Va. 286. The insurer participated in providing a defense for the insured but also provided the insured with a reservation of rights letter. *Id.* In the pleadings, the plaintiff alleged that the shootings at issue were the result of negligence on the part of the insured. State Farm thereafter filed a motion for declaratory judgment to determine whether the acts were negligent or intentional. The plaintiff argued that the doctrine of collateral estoppel precluded State Farm from litigating that issue. *Id.* at 288-89. The plaintiff maintained that the entry of the consent order "on the pleadings" as recited established that the acts were only negligent, therefore the insurance covered the acts. *Id.* at 289. The trial court agreed with the Plaintiff and the Virginia Supreme Court reversed. The Court stated that State Farm was not a party in the prior tort litigation and the requisite privity did not exist because State Farm's interests were adverse, not identical, to the insured's. *Id.* The Court also discussed *Reisen v. Aetna Life and Cas. Co.*, where it held that a declaratory judgment proceeding to determine coverage under a policy could be brought while the underlying tort litigation was pending. *Mabry*, 255 Va. at 290, citing *Reisen*, 225 Va. 327, 302 S.E.2d 529 (1983). Therefore, the Court held that State Farm was not precluded from litigating the issue even though the consent order was based on the pleadings which termed the acts negligent. The Court also discussed other forms of estoppel and waiver and held that those did not apply either. *Id.* at 291. Since State Farm provided a reservation of rights letter to the insured, it was protected to argue no coverage even though it provided a defense. *Id.*

Further in *Angstadt*, the Virginia Supreme Court held that collateral estoppel was improperly applied at the trial court level. 249 Va. 444. In that case, Atlantic Mutual Insurance Company instituted a declaratory judgment proceeding seeking to be relieved of any duty to pay a judgment against the insured. One of the defendants had failed to attend a deposition and as a result, the trial court granted the plaintiff a default judgment against the defendants. Upon learning of the default judgment, Atlantic concluded that the defendants

had breached the cooperation clause of the policy; therefore, it no longer owed a duty to defend. *Id.* at 445. In the declaratory action, Atlantic argued that the court's finding in the underlying case that a defendant had violated the court's order established as a matter of law that the defendants breached the clause in the policy. *Id.* at 446. The Supreme Court disagreed. *Id.* at 447. The Court held that the issue of whether defendants breached the policy had not been decided in the prior litigation. Further, Atlantic was not a party to that action nor was it in privity with the defendants because the interests of the parties became adversarial once Atlantic denied coverage. *Id.*

In the present case, the question of whether Ms. Miller was an "insured" under one or both of the policies is not barred by the doctrine of collateral estoppel and is properly before this Court. Neither of the insurance companies was a party to the previous litigation. The requisite privity does not exist in order to cure that absence because the interests of both insurance companies and Ms. Miller are adverse, not identical. *State Farm v. Mabry,* 255 Va. at 290; *Angstadt,* 249 Va. at 447. The fact that Interstate was on notice of the action against Cheer Virginia does not make Interstate a party to the previous tort action. Interstate, on behalf of Cheer Virginia, did file an answer denying that Ms. Miller was covered under the policy. Then Cheer Virginia was nonsuited. Furthermore, an insurer may take the risk of refusing to defend when it believes that the insured is not covered for a particular act. *Lerner v. General Ins. Co. of Am.,* 219 Va. 101, 103-04, 245 S.E.2d 249 (1978). If it is later determined that the insured was covered by the policy, then the insurance company is liable for breach of contract. *Id.*

As to Nationwide, it did not answer in the previous litigation because it was never named as a defendant, nor were there any allegations in the original or amended MFJ that Ms. Miller was an employee of Accomack to put Nationwide on notice that it might be responsible for Ms. Miller's liability. The factual issues decided in the previous matter are not identical to the factual issues in the present action, namely there was no determination as to whether Ms. Miller was actually an insured under either of the policies. The prior tort action involved the question of whether Ms. Miller failed to appear in order to allow the Court to enter a default judgment against her. Therefore, the insurance companies are free to litigate the issue of coverage.

*Interstate Insurance Group
and Cheer Virginia, Inc.*

Interstate argues that Ms. Miller is not an "insured" under the policy that provides coverage to Cheer Virginia, Inc. The policy defines an "insured" as

"any person who were or are now or shall be directors, officers, or staff of the named insured, whether salaried or not." *Interstate Insurance Policy* at 1. The policy goes on to define an "insured" in another section and describes an "insured" as "directors, officers, and/or staff means directors, officers, and staff of the named insured [Cheer Virginia, Inc.], Executive Board Members, Committee Members, volunteers, and employees, whether salaried or not, but *solely while acting on behalf of, and within the scope of their duties, for the named insured." Interstate Policy* at 4. Ms. Miller admitted that she was not a director, officer, staff member, or employee of Cheer Virginia at any time in any capacity. *See Tr.* at 40-41. She was designated as a representative for Arcadia High School. Testimony from actual employees of Cheer Virginia, including its President Sharon Jenkins, also revealed that none of them thought of Ms. Miller as anything but one who was associated with Arcadia High School, present at the camp on behalf of the Arcadia cheerleaders.

Plaintiff relies on the word "volunteer" to assert that Cheer Virginia is in fact responsible for Ms. Miller's liability. The ordinary meaning of the word "volunteer" is one who offers themselves for a service on their own free will and has no concern or legitimate personal interest in the matter. *Webster's II Dictionary* (1996 ed.); *Black's Law Dictionary*, (6th ed. 1990). While Ms. Miller may have been a "volunteer" under the normal sense of the word, she was not a "volunteer" acting solely on behalf of and within the scope of the duties for Cheer Virginia as required under the policy. As stated above, Ms. Miller testified that she was at the camp solely because of her job as cheering coach for Arcadia. She testified that she was not working for Cheer Virginia in *any* capacity. Therefore, the Court holds that Ms. Miller was not an "insured" under Interstate's policy on behalf of Cheer Virginia, Inc.

### Nationwide Property and Casualty Insurance and Accomack County

Nationwide contends that Ms. Miller is not covered under the policy of insurance which covers Accomack County School Board. That policy states that the named insured includes board members, employees, student teachers, and volunteers. Plaintiffs argue that if the Court finds that Ms. Miller was not covered under Cheer Virginia's policy, then the Court should find that Ms. Miller is covered by the Accomack School Board's policy as Ms. Miller is an "employee" of Accomack County. The allegations in the plaintiffs' AMFJ do not contain any assertions that Ms. Miller is or was an employee of Accomack County at the time of this incident. Plaintiffs solely alleged that Ms. Miller was acting on behalf of Cheer Virginia which they then nonsuited. In fact, in

the plaintiffs' Post-Trial Memorandum to the Court, plaintiffs assert at one point that Ms. Miller was not an employee of Accomack at the time because she was under a ten-month contract and it was summertime. Then later on, in order to support the present argument, plaintiffs argue that she was in fact an employee of Accomack in that she held several positions with the County, including varsity cheerleading coach.

The Court finds that Ms. Miller was not a school board employee at the time of this camp. She was on a ten-month contract and was not getting paid by the school at that time. Essentially, Ms. Miller was acting independently by the time she took part in the camp for the benefit of her cheerleaders. The cheerleaders each paid their own fee and Ms. Miller arranged for Cheer Virginia to put on the camp. Therefore, the Court finds that Ms. Miller was not an "insured" person entitled to coverage under the Nationwide policy.

In sum, the Court finds that neither Interstate nor Nationwide is responsible for Ms. Miller's liability as she is not covered under the terms of either policy.