**BIEBEL BROTHERS, INC., Appellee,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant.**

No. 75–1026.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1975.

Decided July 31, 1975.

Rehearing and Rehearing En Banc Denied Sept. 29, 1975.

Doris J. Banta, St. Louis, Mo., for appellant.

Richard J. Sheehan, Clayton, Mo., for appellee.

Before BRIGHT, Circuit Judge, KILKENNY, Senior Circuit Judge,* and WEBSTER, Circuit Judge.

KILKENNY, Circuit Judge.

Appellant appeals from a summary judgment of liability on an insurance policy and the resultant award of damages in favor of appellee. We reverse.

## FACTUAL BACKGROUND

Appellee, operating in its business as a roofing contractor, entered into a contract to install roofing on a building under construction in St. Louis County, Missouri. Under the terms of the contract, appellee was required to apply roofing materials to a flat metal roof deck which had been constructed by third parties. The first step in the process involved the application to the deck of beads composed of what is known in the trade as steep roofing asphalt. Sheets of fiberglass insulation were then laid over the beads to make a smooth surface. A layer of asphalt-coated base sheets was then installed, followed by a

---

* The Honorable John F. Kilkenny, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation.

coat of steep roofing asphalt applied directly over this base sheeting. Finally, two layers of saturated roofing felts were installed, thus giving the finished product a two-ply construction. For reasons not here relevant, the steep roofing asphalt which appellee applied was entirely unsuitable for the purpose. The error was not discovered until appellee was ready to apply the final flood coat of dead-level asphalt and gravel.

In order for appellee to perform its contract properly, it was compelled to remove to the metal deck all the materials it had applied to the roof. This was done by using a machine which cut the unsuitable roofing material into small pieces, and then removing these pieces with a shovel or other instrument. New replacement materials were then applied in order to restore the roof to the stage the work was in when the mistake was discovered.

At the time of the mistake and its correction, appellee carried a policy of liability insurance with appellant, the relevant terms of which are quoted *infra*.

## THE LITIGATION

After its demand for payment was rejected, appellee instituted this action against appellant on the policy to recover the cost of removing the materials damaged by the application of the defective asphalt and the cost of replacing them with new materials, including labor expenses. Additionally, appellee asked for 20% of the amount for overhead and 10% for profit. The damages did not include the cost of asphalt, an item which the district court had eliminated in an earlier order. It is clear there was no adverse effect on the building after the error had been corrected and that appellee made a profit on the entire contract.

After a summary judgment for appellee on the liability issue, the district court entered judgment for the amounts claimed by appellee, excluding a claim for 10% profit.

The property damage coverage of appellant's policy provides, in pertinent part, as follows:

> The Company will pay on behalf of the *Insured* all sums which the *Insured* shall become legally obligated to pay as *damages* because of
>
> \* \* \* \* \* \*
>
> B. *property damage*
> to which this insurance applies \* \*.
>
> \* \* \* \* \* \*
>
> *Exclusions*
> This insurance does not apply:
>
> \* \* \* \* \* \*
>
> (i) to *property damage* to
>
> \* \* \* \* \* \*
>
> (3) property in the care, custody or control of the *Insured* or as to which the *Insured* is for any purpose exercising physical control;
>
> \* \* \* \* \* \*
>
> (*l*) to *property damage* to the *Named Insured's products* arising out of such products or any part of such products;
>
> (m) to *property damage* to work performed by or on behalf of the *Named Insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
>
> (n) to *damages* claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *Named Insured's products* or work completed by or for the *Named Insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

[Emphasis in original.]

The district court held that none of the exclusions was applicable to the instant facts.

## ISSUE

Did the district court err in deciding that none of the policy exclusions operated to defeat appellee's claim?

## DISCUSSION

▬ The state of Missouri follows the general rule that parties to an insurance contract may agree on limitations and conditions of liability and that an unambiguous insurance contract cannot be construed to afford coverage where it does not exist under the terms of the policy. *Mid-Continent Stores, Inc. v. Central Surety & Ins. Corp.*, 377 S.W.2d 567, 568 (Mo.App.1964). An insurance company may, with the insured's acceptance, insert as many exclusion clauses in its liability policy as it deems proper or necessary as long as they do not conflict with public policy or the statutory law of the state. *Northwestern Mutual Ins. Co. v. Haglund*, 387 S.W.2d 230, 232 (Mo. App.1965).

The district judge, relying upon *Pittsburgh Bridge & Iron Works v. Liberty Mutual Ins. Co.*, 444 F.2d 1286 (3d Cir. 1971), and *Home Indemnity Co. v. Miller*, 399 F.2d 78 (8th Cir. 1968), was of the view that appellant, before seeking the shelter of any one or more of the exclusions, had to show that the *entire building* fell within one or more of the exclusions.

The exclusion clause before the court in *Home Indemnity Co.*[1] is so fundamentally different from the exclusions before us that the decision is of little, if any, value. Some of the court's language might even be construed to benefit appellant's position. The ultimate decision in *Home Indemnity Co.* was in favor of the insurance carrier.

Essentially the same observation can be made of *Pittsburgh Bridge & Iron Works v. Liberty Mutual Ins. Co., supra.* There, a subcontractor instituted an action against its general liability insurer who refused to defend an action arising out of the subcontractor's furnishing a defective part. Here, of course, the contractor removed its own defective work and material and brought an action directly against the insurance carrier. In *Liberty Mutual*, the exclusion[2] is as much off-target as that in *Home Indemnity*. Admittedly, there are one or two phrases in exclusion (h)(4) of the *Liberty Mutual* policy which bear a distant resemblance to some of the language in exclusion (n) before us. However, since exclusion (n) will not govern our decision, the resemblance is here of no significance.

Expanding on its theory that the exclusions did not apply, the district court looked to *L. D. Schreiber Cheese Co. v. Standard Milk Co.*, 457 F.2d 962, 967 (8th Cir. 1972), in which this court drew upon *Hauenstein v. St. Paul-Mercury Indemnity Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954), for its conclusions. From these authorities, and others of the same tenor, the district court concluded that the Missouri courts, if faced with the same problem, would hold that the entire structure was damaged by the application of the improper material, and that of the exclusions only (*l*) and (m) applied. It then went on to hold that while these exclusions did not bar all recovery by appellee, (*l*) precluded re-

---

1.    *   *   *   *   *   *

    Exclusions.
    This policy does not apply:
    (h) under coverage B, to injury to or destruction of * * * (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises * * *.
399 F.2d at 80.

2. Exclusion (h)(4) recited that the policy did not apply:
    To injury to or destruction of * * * any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises.
. 444 F.2d at 1287.

covery for property damage to appellee's products and (m) barred recovery for work performed by appellee, but limited the effect of the exclusions to the value of the asphalt and the value of the services rendered in the application of the asphalt. Neither *Hauenstein* nor *Schreiber*, nor any of the authorities cited by the respective parties, support such a result. For that matter, the exclusions (*1*) and (m) here under scrutiny seem to be unique. We have been given no reference, nor has our research revealed one, which is precisely in point.

■ It is our considered judgment that the district court committed error in limiting exclusion (m) to the cost of the asphalt. The language of the exclusion is broad, unambiguous and all-inclusive. It clearly provides that the insurance does not apply to property damage to work performed by or on behalf of appellee arising out of either the work on any portion thereof, or out of material, parts or equipment furnished in connection therewith. Beyond question, the application of the initial and subsequent coats of asphalt, the placement of the fiberglass insulation and the asphalt-coated base sheets, and the placement of the two layers of saturated roofing felts asphalt was work performed by or on behalf of appellee arising out of its contract. Furthermore, all the materials—not just the asphalt alone—were furnished by appellee in connection with the work project. The entire defective product, consisting of appellee's work and material, was directly removed by it. If exclusion (m) does not apply to the facts before us, it is completely meaningless.

Although construing an exclusion not exactly the same as that before us, we think that *Ross Island Sand & Gravel Co. v. General Ins. Co. of America*, 472 F.2d 750 (9th Cir. 1973), leads to a solution of our problem. It stands for the general rule that, under similar exclusions, damage to the product or to the work of the insured during the course of the job is not damage to the finished product and thus falls within the exclusion.

In *Ross Island*, the insured supplied ready-mix concrete to a general contractor for use in the construction of a high-rise apartment building. The contractor was required to tear out and repour the fourth floor of the building because of alleged defects in the slab. The cost of remedying the defective pour included the cost of replacing the beams, which in themselves, were not damaged or defective but were united with the defective slab. The contractor sued the insured claiming damages for enhanced costs. The insured's tender of defense was refused by the insurance company because its policy did not cover the cost of replacing or repairing any defective goods sold or defective work done by the insured. In deciding the issue, the Ninth Circuit, *inter alia*, said that the district court had correctly held that the insurance contract excluded coverage for the claim. *Id.* at 752. *See* the district court opinion, *Ross Island Sand & Gravel Co. v. General Ins. Co. of America*, 315 F.Supp. 402 (D.Or.1970), for a detailed outline of the facts.

■ The same reasoning is applicable to exclusion (*1*), although this exclusion is limited to property damage to appellee's products arising out of such products or any part of such products. The record conclusively establishes that the damaging agent was appellee's asphalt and that the only other property damage was to appellee's products, namely the asphalt-coated base sheets and the two layers of saturated roofing felts. Because all the damaged products were removed and replaced, it is obvious that the building itself was not damaged.

Fortifying our conclusions that exclusions (*1*) and (m) preclude a recovery on the record before us is the exhaustive opinion in *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.*, 189 Kan. 528, 370 P.2d 396 (1962). That decision makes it clear that a similar exclusion should not be construed to apply to only part of the product(s) furnished by the insured. In other words, the exclusion applies to all the work and material furnished and removed by appellee, rather than to the asphalt alone.

Appellee seeks to avoid the effect of the clear language of exclusions (*l*) and (m) by calling our attention to exclusion (a) which provides that the insurance does not apply to: " * * * liability assumed by the *Insured* under any contract or agreement except an *incidental contract*; but this exclusion *does not apply to a warranty of fitness or quality of the Named Insured's product or a warranty that work performed by or on behalf of the Named Insured shall be done in a workmanlike manner*." [Final emphasis supplied.] Appellee notes the exception and argues that it would be unnecessary if the legal obligation of the insured were not based upon a breach of warranty. It fails to recognize that this language is limited to exclusion (a) and has no application whatsoever to exclusions (*l*) or (m) or the others here under scrutiny.

Although we fail to find the ambiguity in exclusion (n) which was found by the district court and here argued by appellee, our views on the effect of exclusions (*l*) and (m) render unnecessary a discussion of this issue. Strongly supporting appellant's views on the enforceability of the exclusion are *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., Inc.*, 289 Ala. 719, 272 So.2d 232, 235 (1972), and *Hartford Accident & Indemnity Co. v. Olson Bros., Inc.*, 187 Neb. 179, 188 N.W.2d 699, 701 (1971), in which the courts enforced exclusions similar to, if not identical with, the language of exclusion (n). Be that as it may, we need not further consider the alleged ambiguity in exclusion (n). Exclusions (*l*) and (m) are applicable and dispose of appellee's claim.

## CONCLUSION

The judgment of the district court is reversed and the cause remanded with instructions to dismiss the action.

## ORDER

### DENYING PETITION FOR REHEARING AND REJECTING SUGGESTION FOR A HEARING EN BANC

■ In its petition for a rehearing *en banc*, appellee argues that our opinion is inconsistent with this court's unpublished order of affirmance in *Carboline Co. v. Home Indemnity Co.*, 517 F.2d 1407 (8th Cir., 1975).[1] We disagree. True enough, in each case the comprehensive liability insurance policy contained an exclusion providing that the insurer would not be liable for "property damage to the named insured's products." In *Carboline*, the fireproofing substance, Pyrocrete, applied by the subcontractor to vessels and other structures, proved unsuitable for the intended purpose. There, the district court made an explicit finding that the structures were damaged as a result of the application. Because the damaged structures could not be deemed to be "products" of the named insured, the exclusion was inapplicable and the district court so held.

Here, the various roofing materials applied by *Biebel* were "products" of the insured and were applied to the roof of a building not owned by it. Unlike *Carboline*, the building involved in *Biebel* did not sustain damage. The objectionable "products" were promptly removed by appellee. Consequently, the only damage sustained in *Biebel* was to the named insured's own "products." The

---

1. This court's provision for publication of opinions reads in part as follows:

Unpublished opinions, since they are unreported and not uniformly available to all parties, may not be cited or otherwise used in any proceedings before this or any other court except when the cases are related by virtue of an identity between the parties or the causes of action. [Rules—United States Court of Appeals for the Eighth Circuit (Plan for Publication of Opinions) App. 6 (Jan. 27, 1975).]

In this special instance we have agreed to comment on the unpublished *Carboline* case for the sole purpose of clarification for the benefit of the district judge who decided both *Carboline* and the present case.

Our comments in this order are not to be construed as engrafting any exception to the opinion publication rule quoted above.

exclusions in the *Biebel* insurance policy were properly invoked.

*Western Casualty & Surety Co. v. Polar Panel Co.,* 457 F.2d 957 (8th Cir. 1972), is distinguishable for the same reasons.

The petition for rehearing is denied. The suggestion for a rehearing *en banc* is rejected.