## Richmond

## Nationwide Mutual Insurance Company

### v.

## George L. Wenger, Et Al.

June 12, 1981.

Record No. 790272.

Present: All the Justices.

*James G. Welsh* (*Timberlake, Smith, Thomas & Moses,* on brief), for appellant.

*Phillip C. Stone* (*Holmes C. Harrison; Franklin R. Blatt; Wharton, Aldhizer & Weaver; Clark, Bradshaw, Harrison & Layman; Julias, Blatt & Blatt,* on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

In this case of first impression, we are asked to decide whether damages claimed for repair of a structure erected by the insured are compensable under a standard comprehensive general liability (CGL) insurance policy. More specifically, the question presented in this appeal is whether an insurance policy issued by Nationwide Mutual Insurance Company (Nationwide) to J. Wesley Poland Contractor, Inc. (Poland), provided coverage for damages which occurred to poultry houses constructed by Poland and owned by George L. Wenger and others (plaintiffs or owners).[1]

Each of the plaintiffs contracted with Poland for the construction of poultry houses. In January, 1978, the completed poultry houses collapsed from the weight of snow and ice. Both at the time of construction and the time of collapse, Poland was insured by a CGL policy issued by Nationwide.

---

[1] Originally, four separate actions were brought by individuals for whom Poland had constructed poultry houses. The actions were consolidated by the trial court.

Each plaintiff filed suit against Poland for damages allegedly caused by Poland's negligence and breach of warranty in constructing the poultry houses. At the same time, declaratory judgment suits were instituted by the owners seeking a determination whether Poland's alleged negligence and breach of warranty were covered by Nationwide's policy. The trial court, in a memorandum opinion, ruled that the damages to the poultry houses were covered by the policy in question, and Nationwide appeals.

The policy contains the following property damage liability coverage:

> The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of . . .
>
> Coverage B. property damage to which this insurance applies, . . . .

Included in the policy is a provision for "completed operations hazard," which is defined as:

> bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured.

Among the exclusions relied upon by Nationwide to deny coverage is the following:

> This insurance does not apply:
>
> . . . .
>
> (o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
>
> . . . .

■ The owners and Poland contend that the coverage language (especially the "completed operations hazard" provision) is broad, clear and all inclusive and that the exclusions, on the other hand,

are vague, ambiguous and uncertain. Citing *Surety Corporation* v. *Elder,* 204 Va. 192, 197, 129 S.E.2d 651, 655 (1963), they argue that where there is doubt or uncertainty and the language of a policy is susceptible to two constructions, the policy is to be construed liberally in favor of the insured and strictly against the insurer. Nationwide contends that the exclusions relied upon are clear and unambiguous and that a fair and reasonable reading of them indicates that coverage is excluded for the damages sought by the owners.

Since this is a case of first impression in Virginia, we look to the decisions of other jurisdictions for aid and guidance. In doing so, we conclude that when closely read, the weight of authority and, indeed, the better view is that exclusion (o) is unambiguous and that there is no coverage for the damages claimed in the case at bar. Finding that exclusion (o) applies, we make no determination respecting the other exclusions relied upon by Nationwide.

A long series of cases have interpreted language identical or similar to exclusion (o) as barring a claim for damages to a structure built by a contractor. *Biebel Bros., Inc.* v. *United States Fidelity & Guaranty Co.,* 522 F.2d 1207 (8th Cir. 1975); *Southwest Forest Industries, Inc.* v. *Pole Buildings, Inc.,* 478 F.2d 185 (9th Cir. 1973); *Home Indem. Co.* v. *Miller,* 399 F.2d 78 (8th Cir. 1968); *Haugan* v. *Home Indem. Co.,* 86 S.D. 406, 197 N.W.2d 18 (1972); *Consumers Const. Co.* v. *American Motorists Ins. Co.,* 118 Ill. App. 2d 441, 254 N.E.2d 265 (1969); *B. A. Green Const. Co.* v. *Liberty Mutual Ins. Co.,* 213 Kan. 393, 517 P.2d 563 (1973); *Kendall Plumbing, Inc.* v. *St. Paul Mercury Ins. Co.,* 189 Kan. 528, 370 P.2d 396 (1962); *Vobill Homes, Inc.* v. *Hartford Acc. & Indem. Co.,* 179 So.2d 496 (La. Ct. App. 1965); *Weedo* v. *Stone-E-Brick, Inc.,* 81 N.J. 233, 405 A.2d 788 (1979); *Engine Service, Inc.* v. *Reliance Ins. Co.,* 487 P.2d 474 (Wyo. 1971).

■ The appellees contend that, notwithstanding the interpretation given to CGL policies in general, the damage to the poultry houses is covered by the "completed operation hazard" for which Poland paid an extra premium. Once again, this argument has been rejected by a number of courts. *See Southwest Forest Industries,* 478 F.2d at 187; *Home Indemnity Co.,* 399 F.2d at 82; *Engine Service, Inc.,* 487 P.2d at 477.

The Arizona Supreme Court, in *Federal Insurance Company* v. *P.A.T. Homes, Inc.,* 113 Ariz. 136, 547 P.2d 1050 (1976), found the CGL policy to be ambiguous and ruled in favor of coverage.

The Court ruled that exclusion (o) (designated (1) in that policy) conflicted with exclusion (a), which barred coverage for:

> liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner; . . . .

Reading the two exclusions together, the Court held that damage to the insured's work product was excluded unless this damage arose from a breach of warranty. *Id.* at 139, 547 P.2d at 1053.

This reasoning has been rejected in at least three of the decisions we have cited previously. *Biebel Bros.,* 522 F.2d at 1212; *Weedo,* 81 N.J. at 248, 405 A.2d at 795-96; *Haugan,* 86 S.D. at 413, 197 N.W.2d at 22.

> Exclusion (a) does not extend or grant coverage. To the contrary it is a limitation or restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy. When considered with exclusion (m) [exclusion (o) here] it clearly appears that property damage claims of third persons resulting from the insured's breach of an implied warranty are covered *unless the claimed loss is confined to the insured's own work or work product.*

86 S.D. at 413, 197 N.W. 2d at 22. (Emphasis added.)

In *Weedo,* the New Jersey Supreme Court engaged in an extended analysis of the policies underlying the general comprehensive liability policy. When a contractor performs work, warranties arise both under his contract and by operation of law. 81 N.J. at 238-39, 405 A.2d at 790-91. Since the contractor can control the quality of his own work, it is fair to hold him liable when the work is faulty. *Id.* at 239, 405 A.2d at 791. Thus, the risk that the contractor may incur liability under warranty is a normal part of doing business. *Id.*

A second type of risk that arises from construction is injury to people and damage to property other than the completed work itself. *Id.* For example, stucco improperly applied to the exterior of a building may fall and injure a passerby or dent an automobile. *Id.* at 240, 405 A.2d at 791-92. Unlike the first type of risk, where liability is limited to the cost of replacement or repair, the second category of risk subjects the contractor to unlimited liability. For this reason, the contractor turns to the insurance industry to underwrite these risks. *Id.*

The trial court found exclusion (o) ambiguous and therefore limited the scope of that exclusion "only to work being performed," reasoning that "when the performance is completed, the exclusion no longer applies and the loss is covered by the completed operations coverage." In arriving at this result, the trial court interpreted the word "work" in the phrase "property damage to work performed . . ." as meaning work *being* performed; that is to say, the word *work* was interpreted as the *activity* of construction rather than the completed structure. This interpretation was considered and rejected by the Ninth Circuit in *Southwest Forest Industries:*

> When considered in context, the word "work" should be read as a noun, referring back to, and having the same meaning as, the phrase "work performed." The section should thus operate to withdraw coverage for damage to the insured's work product resulting from an inherent defect, even though construction is complete and the contractor has relinquished control. This interpretation is consistent with the construction accorded similar exclusion clauses in numerous other cases.

478 F.2d at 187.

■ As a final argument, appellees, relying on *P.A.T. Homes,* contend that when a policy is interpreted in a different manner by a number of jurisdictions this in itself creates an ambiguity which then must be construed against the insurance company. However, the majority rule, which Virginia adheres to, is that an ambiguity, if one exists, must be found on the face of the policy and here:

> [t]he language used in this exclusion clause is clear and simple—there is nothing ambiguous in the words or phrases used therein. They have a common and well-understood

meaning. When viewed and considered in the light of the entire contract, and as a part thereof, *it is clear that such clause excludes from liability thereunder any claim for damages arising from internal defectiveness of the insured's own work product.*

*Home Indemnity,* 399 F.2d at 84. (Emphasis added.)

The interpretation urged on us by the appellee would turn the policy in question into a performance bond. This was not the intent of the parties, and we will not convert an otherwise unambiguous CGL policy into a performance bond. When the completed operation of the insured causes injury to a person or damage to property, the policy applies, unless the injury is to the completed operation itself.

Consequently, we hold that exclusion (o) precludes coverage under the facts here presented, and the judgment of the lower court will be reversed and final judgment entered for Nationwide.

*Reversed and final judgment.*