# CIRCUIT COURT OF FAIRFAX COUNTY

Pulte Home Corp.

v.

Fidelity and
Guaranty Ins. Co.
and St. Paul Fire
and Marine Ins. Co.

February 6, 2004

Case No. (Law) 210454

BY JUDGE R. TERRENCE NEY

This matter came before the Court on December 12, 2003, pursuant to the parties' cross Motions for Summary Judgment.

Plaintiff Pulte Home Corporation's ("Pulte") seeks Summary Judgment on its claim for reimbursement from Defendants Fidelity and Guaranty Insurance Company ("FGIC") and St. Paul Fire & Marine Insurance Company ("St. Paul") of its costs in defending and settling certain lawsuits filed against Pulte arising out of the installation of allegedly defective Exterior Insulation Finish Systems ("EIFS") on newly built homes in Virginia and Maryland.

FGIC and St. Paul seek Partial Summary Judgment finding no duty on their part to indemnify Pulte for those portions of the settlements of the underlying lawsuits allocated to the repair and replacement of EIFS.

## I. Facts

In 1998 or 1999, fifteen lawsuits (the "Wheatland suits") were brought against Pulte and one of its subcontractors, Coronado Corporation ("CSS"), by Fairfax County homebuyers alleging that their homes were improperly clad with EIFS. Pulte tendered the suits to FGIC, its liability insurance carrier. CSS purchased an insurance policy from FGIC (the "FGIC Insurance Contract"). The policy provided that, under certain circumstances, companies to which CSS had subcontracted work could be treated as additional insureds. Pulte concedes that it qualifies as an additional insured for liability arising out of CSS's work. St. Paul is the successor in interest to FGIC. FGIC failed to respond to Pulte's selection of counsel or otherwise provide Pulte a defense. Pulte contends that it advised St. Paul as to its preferred defense counsel, including his experience and hourly rates. Pulte further requested a response from St. Paul should it have any concerns. No concerns were communicated to Pulte. Pulte asserts it incurred a total of $1,350,293.17 in defending the Wheatland suits. The cases eventually settled.

On December 23, 2002, Pulte filed a Motion for Declaratory Judgment against FGIC and St. Paul seeking a declaration that the terms of its FGIC liability insurance policy, endorsed to include Pulte as an Additional Insured, obligated FGIC to reimburse Pulte for its defense, settlement, and loss-mitigation costs incurred in the underlying Wheatland suits.

Plaintiff seeks declaratory judgment for defense costs (Count I), indemnity (Count II), breach of contract (Count III), violations of the Virginia Unfair Claim Settlement Practices Act (Count IV), breach of implied covenant of good faith and fair dealing (Count V), and unjust enrichment (Count VI). Pulte contends that its defense costs totaled $1,260,785.27.

## II. Analysis

In Virginia, a trial court may enter summary judgment only if no material fact is genuinely in dispute. Rule 3:18 of the Rules of the Supreme Court of Virginia. In considering a motion for summary judgment, a trial court must adopt those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason. *Dickerson v. Fatehi*, 253 Va. 324, 484 S.E.2d 880 (1997). Summary judgment is appropriate only where the

record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove. *Id.*

## A. *Pulte's Motion for Partial Summary Judgment Regarding Reimbursement for Past Defense Costs*

Relying on FGIC and St. Paul's responses to its Requests for Admissions, Pulte asserts that there is no fact in dispute regarding the duty to defend,[1] and that FGIC and St. Paul have breached this duty by failing to reimburse Pulte in full[2] for its out-of-pocket defense costs.

Pulte contends that, prior to seeking reimbursement for its defense costs, it provided information to FGIC and St. Paul on its preferred defense counsel. See *supra*. Pulte asserts it incurred a total of $1,350,293.17 in defending the Wheatland suits. Due to St. Paul's alleged breach of the insurance contract, Pulte contends that St. Paul owes it $1,260,785.27, $1,350,293.17 minus the $89,507.90 paid in the *Peckinpaugh* suit. See *supra*.

FGIC and St. Paul do not dispute their duty to defend Pulte under the insurance policy. FGIC concedes that the issue of the existence of a duty to defend Pulte is moot, as FGIC previously admitted such a duty. *See FGIC's Responses to Requests for Admissions* at ¶ 58. Rather, FGIC and St. Paul dispute the *scope* of the duty owed to Pulte.

Specifically, FGIC and St. Paul assert that Pulte's attempt to have this Court decide on summary judgment (1) *how much* FGIC and St. Paul owe in defense costs; (2) *what entity* is entitled to recover those costs; and (3) whether FGIC and St. Paul must pay what they consider "patently unreasonable costs" is premature, as such matters are material disputed facts and cannot be decided as a matter of law.

In response, Pulte argues that FGIC and St. Paul are improperly limiting their defense coverage on the grounds that (1) "other" insurance

---

[1] *See Admission* at ¶ 58, attached as Exhibit 1 to *Plaintiff's Motion for Partial Summary Judgment.*

[2] Pulte concedes that St. Paul has paid $89,507.90 towards Pulte's defense costs, but asserts that this amount covered costs in connection with only one of the Wheatland suits, *Peckinpaugh et ux. v. Pulte Home Corp.*, at Law No. 184719 (Circuit Court of Fairfax County, May 20, 2002).

may apply to Pulte's claim and (2) Pulte's defense costs are "unreasonable." With respect to the reasonableness of Pulte's defense costs, Pulte asserts that FGIC and St. Paul have waived or are otherwise estopped from challenging the reasonableness of such costs by their failure to provide Pulte a defense or respond to Pulte's selection of counsel.

### 1. *Amount Owed in Defense Costs*

Pulte is seeking reimbursement in the amount of $1,350,293.17, the amount allegedly incurred in defending the Wheatland suits.

In response, FGIC and St. Paul note that the amount that Pulte now seeks is significantly more than the $1,030,672.37 in invoices Pulte submitted to FGIC and St. Paul prior to this litigation. Pulte asserts that it submitted its defense costs to FGIC and St. Paul and directs the Court to its Amended Motion for Judgment, Exhibits C, H, and N as evidence that it incurred $1,350,293.17. *See Pulte' Motion for Partial Summary Judgment Regarding Reimbursement for Past Defense Costs.* FGIC and St. Paul note, however, that nowhere in these exhibits is such an amount indicated and that the only amount of defense costs referenced in aforementioned exhibits is $68,380.48. *See Exhibit C,* attached to Pulte's AMFJ.

Furthermore, FGIC and St. Paul note that Pulte's demand is not consistent with the amount alleged in its Amended Motion for Judgment, $1,500,000 in defense costs. *See Pulte's Amended Mot. for J.* at ¶ 59. Moreover, FGIC and St. Paul allege that they are unable to determine the total defense costs, as Pulte has failed to provide them with all of the defense bills and records, despite repeated requests made by FGIC and St. Paul. Plainly, the amounts are in dispute.

### 2. *Other Entity Insurance Coverage*

Similarly, FGIC and St. Paul argue that Pulte has failed to disclose those amounts it has allegedly recovered from its "other" insurance carriers. Specifically, FGIC and St. Paul argue that Pulte has failed to establish its right to recover defense costs under the FGIC Insurance Contract, as Pulte has allegedly has been paid some of its defense costs from another insurer. FGIC and St. Paul point out that, prior to the filing of this action, Pulte submitted documents to FGIC showing that a significant portion of its defense costs were paid by North American Builders Indemnity Company on behalf of Old Republic Insurance Company. As a

result, St. Paul argues that Pulte cannot "double dip" or "enrich itself" by making double recovery. *See Illinois Tool Works, Inc. v. Home Indemnity Co.*, 24 F. Supp. 2d 851, 857 (D. Ill. 1998), and *White v. Allstate Ins. Co.*, No. CV-94-767, 1995 U.S. Dist. LEXIS 3663, at *12-13 (S.D. Cal. Mar. 17, 1995). To the extent that Pulte's defense costs have already been paid by another carrier, FGIC and St. Paul argue that the party entitled to seek reimbursement under the FGIC Insurance Contract would be Pulte's insured(s) who paid those costs, not Pulte. Furthermore, allowing Pulte to recover these costs from FGIC and St. Paul would create the possibility that FGIC and St. Paul would have to pay the same costs twice, once to Pulte and a second time to the insured.

With respect to its "other" insurance coverage, Pulte asserts that such does not operate to relieve FGIC and St. Paul of their defense obligations. In support, Pulte notes that FGIC's insurance policy is *expressly* designated as primary coverage. *See FGIC Insurance Contract, Commercial General Liability Coverage Form*, Section IV, Part 4(a), at p. 9 of 13, which provides that, "[t]his insurance is *primary* except [when other insurance applies]." Part 4(b) further states that "[W]hen this insurance is excess, we will have no duty under Coverage A or B to defend any claim or 'suit' that any other insurer has a duty to defend."

In addition, Pulte argues that the "other" insurers identified by FGIC and St. Paul are *expressly* designated as excess insurance and are meant to provide national general coverage, not EIFS-specific coverage, as is FGIC's policy.

Pulte contends that its "other" alleged insurance does not share a defense obligation, because such insurance is specifically designated as "excess." For example, the Legion Insurance Policy provides that "this insurance is excess over any other insurance which would apply if this policy had not been written *except* where the Named Insured is Pulte Corporation or any of its subsidiaries." *See e.g., the Legion Policy*, GL2-0292043, May 1, 1998-1999 (Ex. 4) at 4.

The FGIC Insurance Policy makes clear that FGIC and St. Paul, as Pulte's primary insurance carriers, were contractually obligated to provide a full defense of the Wheatland suits, the existence of other potentially applicable primary insurance notwithstanding, and seek contribution, if they chose to do so, from other applicable carriers. *See FGIC Insurance Contract, Commercial General Liability Coverage Form*, Section I, Part 4(b), at p. 9 of 13, which states: "If no other insured defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers." This matter is not disputed.

### 3. *"Reasonable" Defense Costs*

With respect to FGIC and St. Paul's assertion that they are obligated to pay only "reasonable" defense costs, Pulte asserts that FGIC and St. Paul have waived their right to question the reasonableness of Pulte's defense costs by breaching their duty to defend.

Under Virginia law, an insurance company has a separate and independent obligation to defend any suit that triggers its policies, in addition to its obligation to pay claims. *Reisen v. Aetna Life and Cas. Co.,* 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983) (insurance company "is relieved of a duty to defend only when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations"); *see also Morrow Corp. v. Harleysville Mutual Ins. Co.,* 110 F. Supp. 2d 441, 445 (E.D. Va. 2000) ("an insurer has a duty to defend the insured against the *entire* suit, including claims for damage attributable to the non-covered period, regardless of whether the defense costs may be reasonably apportioned between the covered and non-covered periods"); *Donnelly v. Transportation Ins. Co.,* 589 F.2d 761, 765 (4th Cir. 1978) ("If part of a plaintiff's claims against an insured fall within the coverage of a policy and part do not, the [insurance] company should defend all, although it might eventually be required to pay only some claims."); *City of Virginia Beach v. Aetna Cas. & Surety Co.,* 426 F. Supp. 821, 827 (E.D. Va. 1976) ("Once a complainant states one claim within the policy's coverage, the insurer has a duty to accept defense of the *entire* lawsuit even though other claims in the complaint fall outside the policy's coverage.") (Emphasis added.) An insurer's unjustified refusal to defend its insured makes the insurer liable for the breach of its duty to defend. *London Guaranty & Accident Co. v. C. B. Whit and Brothers, Inc.,* 188 Va. 195, 49 S.E.2d 254 (1948).

The breach of the covenant to defend has several consequences, not the least of which is to pay the amount of any judgment up to the policy limits and a reasonable amount expended by the insured for attorney's fees. *See Brenner v. Lawyers Title Ins. Corp.,* 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990) (an insurance company that refuses to defend a covered claim "necessarily is liable for breach of its covenant to defend"); *see also Combs v. Hunt,* 140 Va. 627, 641, 125 S.E. 661, 666 (1924) ("a refusal on the part of the [insurance] company to defend a suit against [its Insured] constitutes a breach of its contract and makes it liable to the [Insured] for the damages he may suffer. . . ."); *Fentress v. Rutledge,* 140

Va. 685, 125 S.E. 668 (1924); and *Erie Ins. Exch. v. Allstate Ins. Co.*, 50 Va. Cir. 61 (City of Waynesboro, 1999).

Although the Supreme Court of Virginia has held that insurers who breach their duty to defend waive rights to contest either coverage[3] or the reasonableness of the judgment amount,[4] the Court has not gone so far as to say that insurers who so breach waive their rights to contest the reasonableness of *defense costs. See e.g., Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1027 (Ind. Ct. App. 1999) (an insurer has a right to challenge the reasonableness of defense costs under similar circumstances); *see also Aquino v. State Farm Ins. Co.*, 349 N.J. Super. 402, 793 A.2d 824, 411-12 (N.J. Super. Ct. App. Div. 2002) (reversing a trial court for failing to consider the reasonableness of attorney's fees); *United Pacific Ins. Co. v. Hall*, 199 Cal. App. (1988) (underlying defense counsel does not have "a meal ticket immunized from judicial review for reasonableness") Additionally, the United States Court of Appeals for the Fourth Circuit applying Virginia law has held that inquiry into the reasonableness of legal fees is legitimate in assessing and awarding reasonable attorney's fees.

*See Jefferson-Pilot Fire & Casualty Co. v. Boothe, Prichard & Dudley*, 638 F.2d 670 (4th Cir. 1980), citing *Maupin v. Maupin*, 158 Va. 663, 164 S.E. 557 (1932).

In sum, FGIC and St. Paul's failure to accept Pulte's tender of the Wheatland suits renders them liable for breach of their duty to defend Pulte pursuant to the terms of the FGIC Insurance Policy. Notwithstanding, as the total amount expended by Pulte in defending the Wheatland suits and the reasonableness of those costs are material facts in dispute, the amount FGIC and St. Paul owe to Pulte cannot be determined as a matter of law.

---

[3] *Id.*

[4] *See Erie Ins. Exch. v. Allstate Ins. Co.*, 50 Va. Cir. 61 (Waynesboro, 1999) (insurer not permitted to challenge the reasonableness of the amount of judgment in the absence of proof of fraud or collusion), citing *Liberty Mutual Ins. Co. v. Eades*, 248 Va. 285, 289, 448 S.E.2d 631, 633 (1994).

*B. FGIC and St. Paul's Motion for Partial Summary Judgment Regarding Defendant's Duty to Indemnify*

In this action, Pulte also seeks indemnity under the FGIC Insurance Contract for the settlements Pulte entered into with certain homeowners in the underlying Wheatland suits.

FGIC and St. Paul, asserting that the settlements were primarily for EIFS recladding costs, seek summary judgment on the basis that neither FGIC nor St. Paul has a duty to indemnify Pulte under the terms of the FGIC Insurance Contract for any portion of the Wheatland settlements allocated to the *repair and replacement* of EIFS.

Subject to certain exclusions, the FGIC Insurance Contract issued to CSS provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of … [property damage] to which the insurance applies." *FGIC Insurance Contract, Commercial General Liability Coverage Form*, Section I, Part 1(a), at p. 1 of 13. "Property damage" to which the FGIC policy applies is that "occurring during the policy periods and caused by an 'occurrence'[5] that takes place in the coverage territory." *FGIC Insurance Contract, Commercial General Liability Coverage Form*, Section I, Part 1(b)(1), at p. 1 of 13.

In addition to the coverage provided to CSS, the FGIC Insurance Contract permits companies to which CSS subcontracted work to be treated as Additional Insureds under the policy for liability arising out of CSS's work. Neither FGIC nor St. Paul disputes that Pulte is an Additional Insured under the FGIC Insurance Contract. *See FGIC's Responses to Requests for Admissions*, ¶ 69.

The "Contractors Extension Endorsement," a sub-part of the FGIC Insurance Contract, governs insurance coverage with respect to Additional Insureds under the policy. This endorsement provides, in relevant part:

2. In addition to the other exclusions applicable to Coverages A, B, and C, the insurance provided to *an additional insured* does not apply to:
a. "Property damage" to:

---

[5] The FGIC Insurance Contract defines a covered "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general conditions." *See FGIC Insurance Contract*, Section V — Definitions, Part 9, at p. 11 of 13.

            (3) "Your work" performed for the additional insured.

*See FGIC Insurance Contract, Contractors Extension Endorsement — Virginia*, Section I, Part 2(a)(3), at p. 1 of 4.

In support of their Motion for Partial Summary Judgment, FGIC and St. Paul make two arguments.

First, they argue that there is no indemnity coverage for repair or replacement of named insured's own work, namely CSS, because "repair and replacement" of EIFS is excluded by the "your work" provision. Second, they assert that, under the terms of the FGIC Insurance Contract, defective workmanship is not a covered "occurrence," the applicability of the "your work" exclusion notwithstanding.

Contrarily, Pulte contends that the "your work" exclusion does not apply to Additional Insureds, as the terms "you" and "your" refer only to the Named Insured, namely CSS. Pulte further asserts that, to the extent that an ambiguity exists with respect to such terms, the ambiguity must be construed in Pulte's favor.

Insurance polices are contracts whose terms must be interpreted in accordance with general principles of construction. *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 449 S.E.2d 799 (1994). The words and phrases in an insurance contract should be given their usual and ordinary meaning. *London Guar. & Accident Co. v. C. B. White & Bros.*, 188 Va. 195, 49 S.E.2d 254 (1948).

Insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders. *St. Paul Fire & Marine Ins. Co. v. S. L. Nusbaum Ins. Co.*, 227 Va. 407, 316 S.E.2d 734 (1984). Accordingly, courts have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, the construction most favorable to the insured will be adopted. *Id.*

If policy language is unambiguous, however, courts do not resort to rules of construction, but rather apply the terms of the policy as written. *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 423 S.E.2d 188 (1992).

Here, utilizing standard commercial general liability ("CGL") policy language, the FGIC Insurance Contract provides coverage for those "sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies." As most

CGL policies contain identical language, weight is generally given to case law from other jurisdictions regarding the interpretation of such policies. *RML Corp. v. Assurance Co. of Am.*, Chancery No. CH02-127 (Norfolk Circuit Court, Dec. 31, 2002).

## C. *Ambiguity of "Your work" Term*

"Property damage" excluded from coverage under the FGIC Insurance Contract includes property damage to "that particular part of any property that must be *restored, repaired, or replaced* because 'your work'[6] was incorrectly performed on it." *FGIC Insurance Contract, Commercial General Liability Coverage Form*, Section I, Part 2 (j)(6), at p. 3 of 13.

Pulte, in response to FDIC and St. Paul's assertion that the "your work" exclusion precludes recovery of those portions of the settlements allocated to EIFS recladding, argues that the term "your work" as used in the FGIC Insurance Contract is ambiguous and thus must be strictly construed against the insurers.

"Your work" is defined in the FGIC policy as "work operations performed by you or on your behalf; and materials, parts, or equipment furnished in connection with such work or operations." *Section V — Definitions, Part 15 of the FGIC Insurance Contract.*

In reviewing similar language contained in other insurance contracts, Virginia courts have held identical "your work" exclusions not to be ambiguous and that such apply to exclude property damage to the insured's own work. *Nationwide Mutual Ins. Co. v. Wenger*, 222 Va. 263, 278 S.E.2d 874 (1981).

For example, in a case with strikingly similar facts, the Norfolk Circuit Court in *RML Corp. v. Assurance Co. of Am.*, applied the "your work" exclusion to bar coverage for the repair and replacement of EIFS. *See RML Corp. v. Assurance Co. of Am.*, 60 Va. Cir. 269, LEXIS Chancery No. CH02-127 (Norfolk Circuit Court, Dec. 31, 2002). Relying on the Supreme Court of Virginia's decision in *Nationwide Mutual Ins. Co. v.*

---

[6] "Your work" is defined in the FGIC Insurance Contract as "work operations performed by you or on your behalf; and materials, parts, or equipment furnished in connection with such work or operations." *See FGIC Insurance Contract, Commercial General Liability Coverage Form*, Section V — Definitions, Part 15, at p. 13 of 13. The FGIC Insurance Contract further states that "[t]hroughout this Policy the word "you" and "your" refer to the Named Insured shown on the declarations." *FGIC Insurance Contract, Commercial General Liability Coverage Form*, p. 1 of 13.

*Wenger*, 222 Va. 263, 278 S.E.2d 874 (1981), the Court granted the insurer's motion for summary judgment on the grounds that the policy expressly "excludes the costs of repairing defective workmanship and any warranties or representations in which RML may have made to prospective purchasers regarding the quality of the facade." *RML Corp. v. Assurance Co. of Am.*, Chancery No. CH02-127 (Norfolk Circuit Court, Dec. 31, 2002).

In addition, the Supreme Court of Virginia has declined prior invitations to "convert an otherwise unambiguous CGL policy into a performance bond," reasoning that "since [a] contractor can control the quality of his own work, it is fair to hold him liable when the work is faulty ... the risk that the contractor may incur liability under warranty is a normal part of doing business." *Wenger*, 222 Va. at 267, 278 S.E.2d at 876, *citing Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979).

Pulte argues, however, that reliance on *RML Corp.* and *Wenger* is flawed, as those cases involve only Named Insureds seeking coverage for their own defective work, not Additional Insureds seeking indemnification against the risk that the Named Insured's work would be defective.

Such a distinction, however, is without consequence here. To the extent that Pulte contends that the terms "you" and "your" in the FGIC Insurance Policy do not apply to an Additional Insured, such a contention cannot be accepted given the language in the "Contractors Extension Endorsement," which expressly excludes coverage to an Additional Insured, such as Pulte, for property damage stemming from the Named Insured's defective workmanship performed for the Additional Insured. *See FGIC Insurance Contract, Contractors Extension Endorsement — Virginia*, Section I, Part 2(a)(3), at p. 1 of 4.

The United States District Court for the Eastern District of Virginia, Richmond Division, recently addressed the scope of a similar "your work" exclusion contained in a standard CGL insurance policy in *Travelers Indemnity Co. of Am. v. Miller Building Corp.*, 2003 U.S. Dist. LEXIS 24300, Civil Action No. 3:03CV441 (E.D. Va., Richmond Division, December 24, 2003). There, the Court held that the "your work" exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the insured's behalf by a subcontractor, given the subcontractor exception contained within the insurance policy.

A similar subcontractor exception appears in the FGIC Insurance Contract, which provides that the "your work" exclusion "does not apply if

the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

Given this exception to the "your work" exclusion, Pulte asserts that it is not precluded from coverage for damages arising out of its subcontractor's defective workmanship.

Although the Court in *Travelers Indemnity* found that, via the subcontractor exception, defective work performed by a subcontractor did not affect the coverage for the general contractor, the case is factually distinguishable and thus inapplicable here.

First, unlike in *Travelers Indemnity*, Pulte, the general contractor here, is not the Named Insured under the FGIC Insurance Contract. Pulte is not suing under its own insurance policy but rather under CSS's policy.

Second, although the FGIC Insurance Contract contains a subcontractor exception, Pulte does not fit within this exception because it is not one of CSS's subcontractors. And Pulte can hardly claim to be a subcontractor, given that it concedes it did not perform work on any of the fifteen Wheatland homes. *Pulte's Opp. to Defs.' Motion for Partial Summary Judgment*, p. 2.

Lastly, and more importantly, the Contractors Extension Endorsement contained in the FGIC Insurance Contract expressly excludes coverage for "your work," i.e., work operations performed by CSS or on CSS's behalf, even if performed for the Additional Insured.

## D. *"Occurrence" Defined*

The FGIC Insurance Contract provides insurance coverage for property damage "only if the … 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'." *FGIC Insurance Contract, Commercial General Liability Coverage Form*, Section I, Part 1(b)(1), at p. 1 of 13.

FGIC and St. Paul argue that Pulte is not entitled to the coverage it seeks because defective workmanship does not constitute an "occurrence" under the FGIC Insurance Contract.

The FGIC Insurance Contract defines a covered "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general conditions." See *supra*. Similarly, the Supreme Court of Virginia has held that an "occurrence" in insurance policies means an

accident,[7] and that an accident is "an event that takes place without one's foresight or expectation, an un-designed, sudden ... event. *Harris v. Bankers Life & Cas. Co.*, 222 Va. 45, 46, 278 S.E.2d 809, 810 (1981). *See also Travelers Indemnity Co. of Am. v. Miller Building Corp.*, 2003 U.S. Dist. LEXIS 24300, Civil Action No. 3:03CV441 (E.D. Va., Richmond Division, December 24, 2003).

Applying these definitions, defective workmanship cannot constitute a covered "occurrence" under the FGIC Insurance Contract, as faulty workmanship by the insured is almost always foreseeable. In short, the Court finds that Pulte's liability to repair and replace the EIFS facade on the Wheatland homes did not result from an "accident" on the part of CSS, but rather from its failure to satisfy its obligations under the new home sales contracts. *See RML Corp. v. Assurance Co. of Am.*, 60 Va. Cir. 269, Chancery No. CH02-127 (Norfolk Circuit Court, Dec. 31, 2002); *see also Harbor Court Assocs. v. Kiewit Constr. Co.*, 6 F. Supp. 2d 449 (D. Md. 1998) ("Any defects in any part of the building would thus be 'expected' ... irrespective of whether the actual physical work was performed by Kiewit-General [the Named Insured] or one of [its] subcontractors. Therefore, with regard to Kiewit-General, the alleged damages to the brick veneer of Harbor Court were not caused by an occurrence."); and *Lerner Corp. v. Assurance Co. of Am.*, 120 Md. App. 525, 707 A.2d 906 (Md. Ct. Spec. App. 1998) (necessary repairs to facade for defective workmanship not an "accident").

### III. Conclusion

With respect to FGIC and St. Paul's duty to defend Pulte in the underlying Wheatland suits, the Court finds no material fact in dispute regarding either the existence or breach of that duty. Although a breach of the duty to defend results in a waiver of the right to contest coverage, such a breach does not amount to a waiver of the right to challenge the reasonableness of defense costs.

As to the "your work" exclusion contained within the FGIC Insurance Contract, it clearly excludes indemnity for repair or replacement of "your work" by the name insured. The language contained in exclusion "j" in the insurance policy at issue in *RML Corp.* is the identical language contained in exclusion "j" here. The Court finds that these exclusions

[7] *Norman v. Insurance Co. of N. Am.*, 218 Va. 718, 239 S.E.2d 902 (1978).

extend to Pulte, the Additional Insured, by virtue of the "Contractors Extension Endorsement."

For these reasons, Pulte's Motion for Summary Judgment regarding Reimbursement for Pulte's Defense Costs is denied. FGIC and St. Paul's Motion for Partial Summary Judgment regarding their Duty to Indemnify Pulte for those portions of the Wheatland Settlements allocated to the repair and replacement of EIFS is granted. As for what fraction of the global settlements is attributable to CSS's allegedly defective work, such is a matter to be determined at trial.